# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| BODINE PERRY, PLLC, | ) | CASE NO. 4:22-cv-00169 |
| | ) | |
| Plaintiff, | ) | JUDGE CHARLES E. FLEMING |
| | ) | |
| vs. | ) | |
| | ) | **ORDER** |
| MATTHEW F. BODINE, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |

Currently pending before the Court in this case is Defendants Matthew F. Bodine and Bodine and Company, LLC's (collectively "Defendants") Motion to Dismiss for Failure to State a Claim (ECF No. 6).  For the following reasons, Defendants' Motion is GRANTED.

## I.      BACKGROUND

### A.  Factual

#### 1.  The Companies

Plaintiff, Bodine Perry, PLLC, ("Plaintiff" or "Bodine Perry") is a Florida company that offers accounting services across the United States, including from its office in Canfield, Ohio. (ECF No. 1, Compl. at 1).   Defendant Matthew F. Bodine ("Mr. Bodine") cofounded Bodine Perry, PLLC, along with Daniel Perry ("Mr. Perry") in 2002.  (ECF No. 6, Mot. at 3).

On February 1, 2019, Mr. Perry and Mr. Bodine filed an application for the federal registration of the "standard character mark," "BODINE PERRY" in connection with accounting services.  (ECF No. 1, Compl. at 3).  The United States Patent and Trademark Office ("USPTO") registered the mark on August 6, 2019, with its date of first use in commerce on January 17, 2017.

*Id.*  On October 26, 2021, Mr. Bodine left Bodine Perry, PLLC.  (ECF No. 6, Mot. at 3).  Prior to

October 26, 2021, Mr. Bodine was subject to an Operating Agreement that provided:

> 2.5 Company Property. All property owned by the Company,
> whether real or personal, or tangible or intangible (Including without
> limitation, any goodwill), shall be deemed to be owned by the
> Company as an entity, and no Member, individually, shall have any
> ownership interest in such property."

On October 26, 2021, Mr. Bodine signed a Trademark Assignment Agreement (the

"Assignment Agreement").  (ECF No. 1, Compl. at 3).  Plaintiff argues the effect of the

Assignment Agreement is that Bodine Perry, PLLC, is assigned as "the sole owner of all right,

title, and interest in and to the federally registered service mark 'BODINE PERRY,' together with

the goodwill of the business connected with its use." *Id.*  Since the date of the assignment, Plaintiff

has been and is presently using the mark "BODINE PERRY" in connection with accounting

services. *Id.*

On October 28, 2021, Mr. Bodine formed his own accounting services company in Ohio,

Defendant Bodine and Company, LLC, ("Bodine and Co."), using the trademark "BODINE AND

COMPANY." (*Id.* at 4).

### 2. The Secondary Marks

Plaintiff alleges that its use of the primary mark "BODINE PERRY" "in rectangular form,

in association with artwork consisting of a cube to the left of the word mark and the tag line

'Certified Public Accountants & Advisors' across the bottom" is a secondary mark of Bodine

Perry, PLLC. *Id.*  See below:



Plaintiff then alleges that Defendants have adopted the "BODINE PERRY" marks because (1) their word mark "BODINE AND COMPANY" uses the "phonetic term 'BODINE'" and (2) their secondary mark "is similarly in rectangular form, has a pair of half cubes to the right of the word mark, and the tag line "Certified Public Accountants" across the bottom. *Id*. See below:



### B.  Procedural

Plaintiff initiated this suit against Defendants on January 31, 2022, seeking to enjoin Defendants from using the "BODINE AND COMPANY" mark in commerce. (*Id*. at 10-11). Plaintiff's Complaint asserts claims for federal trademark infringement, breach of agreement, unfair competition/false designation of origin, common law trademark infringement, common law unfair competition, Ohio deceptive trade practices act, and tortious interference with business relationships. (ECF No. 1, Compl. at 4-9).

On February 25, 2022, Defendants filed their Motion to Dismiss for failure to state a claim upon which relief may be granted. (ECF No. 6). On March 10, 2022, Plaintiff filed its Opposition. (ECF No. 8). On March 24, 2022, Defendants filed a Reply to Plaintiff's Opposition (ECF No. 9) and Plaintiff filed a Sur-Reply on July 18, 2022 (ECF No. 12).

## II.    LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a party may move the court to dismiss the case if the complaint does not state a claim on which relief can be granted. A "motion to dismiss for failure to state a claim is a test of the plaintiff's cause of action as stated in the complaint, not a challenge to the plaintiff's factual allegations." *Golden v. City of Columbus*, 404 F.3d 950, 958–59 (6th Cir. 2005). Consequently, the Court must construe the complaint in the light most

favorable to the non-moving party, accept all factual allegations as true, and make reasonable inferences in favor of the non-moving party. *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008); *Murphy v. Sofamor Danek Gp., Inc.*, 123 F.3d 394, 400 (6th Cir. 1997). The Court is not required, however, to accept as true mere legal conclusions unsupported by factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)).

Although liberal, the Rule 12(b)(6) standard requires more than the bare assertion of legal conclusions to survive a motion to dismiss. *Allard v. Weitzman*, 991 F.2d 1236, 1240 (6th Cir. 1993) (citation omitted). The complaint must "'give the defendant fair notice of what the claim is, and the grounds upon which it rests.'" *Nader v. Blackwell*, 545 F.3d 459, 470 (6th Cir. 2008) (quoting *Erickson v. Pardus*, 551 U.S. 89, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007)). While a complaint need not contain "detailed factual allegations," its "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1964 (2007). A complaint that suggests "the mere possibility of misconduct" is insufficient; rather, the complaint must state "a plausible claim for relief." *Iqbal*, 129 S.Ct. at 1950 (citing *Twombly*, 550 U.S at 556, 127 S.Ct. 1955).

## III.    LAW AND ANALYSIS:

Plaintiff alleges Defendants wrongfully used the "BODINE PERRY" mark in connection to Defendants' accounting services. (ECF No. 1, Compl. at PageID #3). Plaintiff asserts that such use: violates the Lanham Act, 15 U.S.C. §§ 1114 and 1125(a)(1), and the Ohio Deceptive Trade Practices Act, Ohio Rev. Code 4165.02(A)(2); breaches the Operating and Assignment Agreements; constitutes common law trademark infringement and unfair competition as well as

tortious interference with business relationships.  (See generally ECF No. 1, Compl.).  Defendants argue that Plaintiff failed to sufficiently plead facts, that if accepted as true, would allow the Court to draw a reasonable inference that Plaintiff owns the "BODINE PERRY" mark and Defendants are liable for the alleged conduct.  (ECF No. 6, Mem. in Supp. at 1-6).

The Court finds that Plaintiff has plead facts that draw a reasonable inference that it owns the "BODINE PERRY" mark. However, Plaintiff has failed to sufficiently plead facts that make Counts I through VII of its Complaint plausible.  Therefore, the Court rejects Plaintiff's arguments.

### A. Counts I and IV – Trademark Infringement

With respect to the federal and Ohio common law trademark infringement claims, Plaintiff fails to state a plausible claim upon which relief may be granted.  To establish liability for trademark infringement under the Lanham Act, 15 U.S.C. § 1114, Plaintiff must show (1) that it owns a valid, protectable trademark, (2) that the Defendants used the mark in commerce and without the registrant's permission, and (3) there is a likelihood of consumer confusion.  *Coach Inc., v. Goodfellow*, 717 F.3d 498, 502 (6th Cir. 2013) (internal quotation omitted); *see also* 15 U.S.C § 1114(1).  Federal and Ohio common law trademark infringement claims are treated the same.  *Daddy's Junky Music Stores, Inc. v. Big Daddy's Fam. Music Ctr.*, 109 F.3d 275, 288 (6th Cir. 1997).  Accordingly, the Court will analyze these claims together.

### 1. Ownership and Use

Plaintiff argues that, pursuant to the Assignment Agreement, Bodine Perry, PLLC owns the "BODINE PERRY" mark.[1]  However, as Defendants point out, the Assignment Agreement fails to explicitly mention or identify the mark, and the "Schedule 1" document referenced in the Assignment Agreement is not included as an exhibit to the Complaint or Plaintiff's Opposition.

---

[1] ECF No. 1, Compl. at 3.  See also the Trademark Assignment Agreement (ECF Nos. 1-3, 8-3).

(ECF No. 6, Mem. in Supp. at 8).  The Assignment Agreement should be read in conjunction with the Operating Agreement,[2] as it is an exhibit to the Operating Agreement.  In doing so, the Court finds merit to the argument that Mr. Bodine and Mr. Perry intended to assign their individual interests in the "BODINE PERRY" mark to Plaintiff.  The Operating Agreement provides:

> "(c) <u>Name</u>. The Company shall operate under the "Bodine Perry" name and service mark, as assigned by Matthew F. Bodine and Daniel G. Perry to the Company pursuant to that form of Assignment attached hereto as **Exhibit B**…"[3]

The "Exhibit B" referenced in the Operating Agreement is the Assignment Agreement.[4]  Mr. Bodine's signature is on both the Operating and Assignment Agreements, dated October 25, 2021 and October 26, 2021, respectively.[5] His signature indicates that Mr. Bodine understood and agreed that the "BODINE PERRY" mark would be assigned to Bodine Perry, PLLC going forward and that the terms of that assignment would be those found in the Assignment Agreement.

Defendants argue, though, that the Operating and Assignment Agreements are not sufficient to establish: 1) that the "BODINE PERRY" mark was actually assigned, or 2) that Plaintiff owns the mark.  (See ECF No. 9, Reply).  They base this on the fact that the USPTO has only *received* submission of, but has not *recorded,* the assignment.  (Id. at 4).  Defendants point out that Plaintiff has not provided any factual allegations or documentation of a USPTO Notice of Recordation or Non-Recordation in response to the assignment submission, nor has it offered any justification for not doing so.  (Id. at 4-5).

---

[2] See ECF No. 8, Opp. at 4.
[3] See the Operating Agreement (ECF Nos. 1-2, 8-3).
[4] *Id*.
[5] *Id*.

In its Sur-Reply, Plaintiff argues that although a trademark registration document is *prima facie* evidence of ownership under 15 U.S.C. § 1057,[6] it is subject to a rebuttable presumption and that the "standard test for ownership is use."  (ECF No. 12, Sur-Reply at 1) (citing *Sengoku Works Ltd. V. RMC Int'l, Ltd.*, 96 F.3d 1217, 1219-20 (9th Cir. 1996)).  However, the Plaintiff only partially states the Ninth Circuit's holding.  It states:

> "… the standard test of ownership is **priority of use**. To acquire ownership of a trademark it is not enough to have invented the mark first or even to have registered it first; the party claiming ownership must have been the first to actually use the mark in the sale of goods or service … When proving ownership of a trademark, federal registration of the mark is prima facie evidence that the registrant is the owner of the mark … Therefore, **the registrant is granted a presumption of ownership, dating to the filing date of the application for federal registration**, and the challenger must overcome this presumption by a preponderance of the evidence … However, the non-registrant can rebut this presumption by showing that the registrant had not established valid ownership rights in the mark at the time of registration—**in other words, if the non-registrant can show that he used the mark in commerce first, then the registration may be invalidated.**"

*Sengoku Works*, 96 F.3d at 1219-20 (emphasis added).  *Sengoku* is unlike this case in multiple ways.  First, the appeal in *Sengoku* was based on a denied motion of judgment notwithstanding the verdict, where the jury found in favor of trademark infringement.  *Id*. at 1217-19.  Here, the court is deciding a motion to dismiss based on the Complaint and attached documentation in support.  There has been no jury determination in this case, nor is there the same breadth of evidence as in *Sengoku*.  The trademark ownership dispute in *Sengoku* arose between the manufacturer of a kerosene heater and the distributor it used to exclusively market and sell the

---

[6] "A certificate of registration of a mark upon the principal register provided by this chapter shall be prima facie evidence of the validity of the registered mark and of the registration of the mark, of the owner's ownership of the mark, and of the owner's exclusive right to use the registered mark in commerce on or in connection with the goods or services specified in the certificate, subject to any conditions or limitations stated in the certificate." 15 U.S.C. § 1057(b).

heater.  *Id*.  We do not have a similar relationship or distribution agreement at play here.  The Ninth Circuit's decision to affirm the jury's verdict was based on evidence provided by the manufacturer including: (1) the manufacturer invented the heater; (2) the manufacturer affixed its mark to the heater in 1982, at least two years before working with the distributor; (3) the distributor did not acquire a federal registration of the mark until 1992; and (4) the manufacturer controlled the product quality and uniformity of the heater.  *Sengoku Works*, 96 F.3d at 1220-21.  Here, both Mr. Bodine and Mr. Perry co-founded the Bodine Perry, PLLC business; both originally applied for and owned the "BODINE PERRY MARK," and both had used the mark from January 2017 until its registration in August 2019.  The kind of evidence that supported priority of use in *Sengoku* does not exist here for Plaintiff.

In the Sixth Circuit, "trademark or 'service mark ownership is not acquired by federal or state registration. Rather, ownership rights flow only from prior appropriation and actual use in the market.'"  *Allard Enterprises, Inc. v. Advanced Programming Resources, Inc*., 146 F.3d 350, 356 (6th Cir. 1998) (*quoting Homeowners Group, Inc.,* 931 F.2d 1100, 1105 (6th Cir. 1991)).  Federal registration of a service mark serves as *prima facie* evidence of ownership, and places the burden on the opposing party to show prior appropriation and *continued use* of a mark.  *Allard*, 146 F.3d at 356-7.  The crux of this analysis is whether the party used the mark in commerce.  *Id*. at 357.  "A mark shall be deemed to be in use[d] in commerce ... on services when it is used or displayed in the sale or advertising of services and the services are rendered in commerce…" *Id.*; see also 15 U.S.C.§ 1127.

The Court finds that based on the facts as alleged, it is plausible that Plaintiff is the owner of the "BODINE PERRY" mark.  Plaintiff pled that it uses its mark to advertise its accounting services and its registration indicates that the mark is being used in connection with accounting

services.  (ECF No. 1, Compl. at 3 ¶ 7; ECF No. 1-1, Pl.'s Ex. 1).  Although Mr. Bodine and Mr. Perry used the unregistered mark a little over two years before it was registered, Plaintiff pleaded that it had continuous non-stop use of the mark since the date of registration and has continued to use it since Mr. Bodine left the business.  (ECF No. 1, Compl. at 3 ¶ 7-10).

On the opposite end of the spectrum, Plaintiff has not sufficiently pleaded that Defendants used the "BODINE PERRY" mark in commerce.  The "BODINE PERRY" and "BODINE AND COMPANY" marks are two significantly different marks on their face.  While the name "Bodine" appears in both, that alone does not render the marks identical.  Therefore, the Court does not find that Defendants have used Plaintiff's mark in commerce.

### 2.  Confusion

The touchstone of a trademark claim under Section 1114 is whether the Defendants' use of the disputed mark is likely to cause confusion among consumers regarding the origin of the goods or services offered by the parties.  *Abercrombie & Fitch v. Fashion Shops of Kentucky*, 363 F. Supp. 2d 952, 959 (S.D. Ohio 2005) (citing *Daddy's Junky Music Stores, Inc.*, 109 F.3d at 280).

Plaintiff makes the conclusory allegation that Defendants' use of the "BODINE AND COMPANY" mark is "likely to cause confusion as to the origin of those services."[7]  Beyond that allegation, the Complaint is devoid of factual allegations that, if taken as true, would plausibly show that there actually is a likelihood of confusion between Plaintiff's and Defendants' marks. In the "Common Facts" portion of the Complaint, there are no allegations regarding confusion, or whether actual confusion occurred.[8]

The Sixth Circuit considers eight factors when determining whether the alleged facts support a likelihood of confusion: (1) strength of the plaintiff's mark; (2) relatedness of the goods;

---

[7] ECF No. 1, Compl. at 5 ¶ 17.
[8] See generally *Id*. at 3-4.

(3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels used; (6) likely degree of purchaser care; (7) defendant's intent in selecting the mark; and (8) likelihood of expansion of the product lines. *Frisch's Restaurants, Inc. v. Elby's Big Boy of Steubenville, Inc.*, 670 F.2d 642 (6th Cir. 1982), *cert. denied*, 459 U.S. 916, 103 S.Ct. 231, 74 L.Ed.2d 182 (1982). A plaintiff does not need to prevail on each of the abovementioned "*Frisch's* factors" to establish the likelihood of confusion. *Daddy's Junky Music Stores, Inc.*, 109 F.3d at 280. "These factors imply no mathematical precision, but are simply a guide to help determine whether confusion is likely … The ultimate question remains whether the relevant consumers are likely to believe that the products or services are affiliated in some way." *Id.* (citing *Homeowners Group,* 931 F.2d at 1107). The *Frisch's* factors do not weigh in favor of Plaintiff's claim that Defendants' "BODINE AND COMPANY" mark is likely to cause confusion among consumers regarding the origin of the services offered by the parties.

### a.  Strength of the Plaintiff's mark

To determine the strength of a mark, courts look to "the mark's distinctiveness and degree of recognition in the marketplace." *Homeowners Group, Inc.,* 931 F.2d at 1107. "A mark is strong if it is highly distinctive, i.e., if the public readily accepts it as the hallmark of a particular source; it can become so because it is unique, because it has been the subject of wide and intensive advertisement, or because of a combination of both." *Id.* (internal quotation marks and citation omitted). Courts assess a mark's distinctiveness and resulting strength by placing the mark into one of four categories: "(1) generic or common descriptive"; "(2) merely descriptive"; "(3) suggestive"; or "(4) arbitrary or fanciful." *Induct–O–Matic Corp. v. Inductotherm Corp.,* 747 F.2d 358, 362 (6th Cir. 1984) (internal quotation marks and citation omitted).

"A generic term is the weakest type of mark; it is a term used to commonly describe the relevant type of goods or services [sic] and cannot become a trademark under any circumstances." *Champions Golf Club, Inc. v. The Champions Golf Club, Inc.,* 78 F.3d 1111, 1117 (6th Cir. 1996) (internal quotation marks and citation omitted). "A merely descriptive term specifically describes a characteristic or ingredient of an article," and "is entitled to protection only upon a showing of secondary meaning, that is, by becoming distinctive of the applicant's goods." *Id.* (internal quotation marks and citations omitted). A suggestive term "suggests rather than describes an ingredient or characteristic of the goods and requires the observer or listener to use imagination and perception to determine the nature of the goods." *Id.* (internal quotation marks and citation omitted). The final category encompasses fanciful or arbitrary marks, which are the strongest type of mark. *Id.* (citing *Little Caesar Enterprises, Inc. v. Pizza Caesar, Inc.,* 834 F.2d 568, 571 (6th Cir. 1987)). "An arbitrary mark has a significance recognized in everyday life, but the thing it normally signifies is unrelated to the product or service to which the mark is attached, such as CAMEL cigarettes or APPLE computers. A 'fanciful' mark is a combination of letters or other symbols signifying nothing other than the product or service to which the mark has been assigned, such as EXXON or KODAK." *Id.* (internal quotation marks and citation omitted).

Personal names, including both surnames and first names are generally regarded as distinctive terms which require proof of secondary meaning. *Dominic's Rest. of Dayton, Inc. v. Mantia*, No. 3:09-CV-131, 2009 WL 1838282, at *3 (S.D. Ohio June 24, 2009) (internal citation omitted). "Secondary meaning has been defined as '[t]he power of a name or other configuration to symbolize a particular business, product, or company. *Id.* (internal citation omitted) (internal quotation omitted). Said another way, a mark has acquired secondary meaning when its use has

been uniquely associated with a specific source.  *Id.* (citing *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 766 n. 4 (1992).[9]

Here, Defendants' "BODINE AND COMPANY" mark contains the name "Bodine," Mr. Bodine's surname.  The Plaintiff has not plead sufficient facts to state a plausible claim that the name "Bodine" has gained a secondary meaning or has been uniquely associated with a specific source.  Otherwise stated, there are no facts alleged in the Complaint nor evidence from the Plaintiff that the "Bodine" name has become uniquely associated with accounting services.

**b.  Relatedness of the Services**

The Sixth Circuit has used three criteria for testing the relatedness factor: (1) if the parties compete directly, confusion is likely if the marks are sufficiently similar; (2) if the goods and services are somewhat related, but not competitive, then the likelihood of confusion will turn on other factors; and (3) if the products are unrelated, confusion is highly unlikely.  *Autozone, Inc. v. Tandy Corp.*, 373 F.3d 786, 797 (6th Cir. 2004) (internal citation omitted)*.*  Thus, the relatedness factor focuses on whether goods or services with comparable marks that are similarly marketed and appeal to common customers are likely to lead consumers to believe that they come from the same source or are somehow connected with or sponsored by a common company.  *Id.* (internal citations omitted).

Plaintiff and Defendants are competitors in the accounting services industry.  The inquiry then turns to whether the marks are sufficiently similar.  The Court finds that the parties' marks are

---

[9] The Sixth Circuit set forth seven (7) factors that a court is to consider when determining whether a particular trade dress has acquired a secondary meaning. *Abercrombie & Fitch Stores, Inc.,* 280 F.3d at 640 n. 14.  These factors were set forth in the context of summary judgment and a determination of whether to grant a permanent injunction.  The issue before the Court here, however, is whether to grant a motion to dismiss, not a permanent injunction, and the issue here is in regard to a service mark and not trade dress.

similar enough that there could be a likelihood of confusion with new customers.  As Defendants stated, there have been several Bodine Perry, PLLC, clients that have left and followed Mr. Bodine to Bodine and Co. because they prefer to do business with him.[10]  However, there is a chance that new customers looking for accounting services could find either (or both) business(es) and not immediately realize they are separate.

### c.  Similarity of the Marks

When examining similarity, courts should examine the pronunciation, appearance, and verbal translation of conflicting marks.  *Autozone*, 373 F.3d at 795.  A side-by-side comparison is not necessarily appropriate, and courts must determine whether a given mark would confuse the public when viewed alone.  *Id.*

The marks in the instant case are distinct.  Their similarities include a rectangular shape, the name "Bodine,"  and the words "Certified Public Accountants" in the tag line. The marks have several differences as well.  Plaintiff's mark is two shades of green, includes a full diamond-shaped cube on the left side, has the words "& Advisors" at the end of the tag line, and has the name "Perry" after the name "Bodine."  Defendants' mark is blue, white, and dark grey, contains the words "and Company" after "Bodine," has two half diamonds on the right side, and the words "Integrity and Vision" under the tag line.  Whether comparing the marks side by side or looking at them individually, they are not similar enough to cause confusion.

---

[10] See ECF No. 6, Mem. in Supp at 3.

### d.  Evidence of Actual Confusion

Evidence of actual confusion is the best evidence of a likelihood of confusion, but it is not required.  *Autozone*, 373 F.3d at 798.  The Complaint contains no allegations of actual consumer confusion.

### e.  Marketing Channels Used

This factor considers how and to whom the respective goods or services of the parties are sold.  *Champions Golf Club, Inc.*, 78 F.3d at 1120 (internal citations omitted).  Dissimilarities between the predominant customers of Plaintiff's and Defendants' services lessens the possibility of confusion.  *Id.*

Plaintiff and Defendants market accounting services and have clients in Ohio.  However, Plaintiff is organized in the state of Florida, with its principal place of business in Florida and a satellite office in Ohio.  Defendant Bodine and Co. is organized in the state of Ohio, with its principal place of business in Ohio, and Mr. Bodine is a resident of Ohio.  Since Plaintiff's accounting firm is primarily in Florida and Defendants' accounting firm is primarily in Ohio, their respective marketing channels do not appear to be similar enough to cause a high level of confusion.

### f.  Likely Degree of Purchaser Care

The standard normally used to determine the likely degree of purchaser care is the typical buyer exercising ordinary caution.  *Champions*, 78 F.3d at 1120.  When goods or services are sold to more sophisticated buyers or when the goods or services are expensive or unusual, other things being equal, there is less likelihood of confusion.  *Id.*  By the same token, the less care that a

purchaser is likely to take in comparing products or services, the greater the likelihood of confusion. *Wynn Oil Co. v. American Way Service Corp.*, 943 F.2d 595, 602 (6th Cir. 1991).

In this case, the likely degree of purchaser or consumer care is greater because consumers of accounting services are generally more sophisticated. Thus, confusion is less likely.

### g.  Defendants' Intent in Selecting the Mark

Proving intent is not necessary to demonstrate the likelihood of confusion, but the presence of intent strengthens the likelihood of confusion. *Autozone*, 373 F.3d at 799. Circumstantial evidence of copying, particularly the use of a contested mark with knowledge of the protected mark, is sufficient to support an inference of intentional infringement. *Id.* A defendant who purposely chooses a particular mark because it is similar to that of an existing mark "is saying, in effect that he thinks there is at least a possibility that he can divert some business from the existing user and the defendant ought to know at least as much about the likelihood of confusion as the trier of fact." *Little Caesar Enterprises, Inc. v. Pizza Caesar, Inc.*, 834 F.2d 568, 572 (6th Cir. 1987).

In this case, the Court does not find there is circumstantial evidence that Defendants intended to copy Plaintiff's "BODINE PERRY " mark. Defendants used Mr. Bodine's surname in the disputed mark "BODINE AND COMPANY."  Plaintiff did not plead sufficient facts to state a plausible claim that Defendants used "Bodine" to intentionally infringe on Plaintiff's "BODINE PERRY " mark. Rather, they offered this in a conclusory statement with no further support. (ECF No. 1, Compl. at 9 ¶ 44).

### h.  Likelihood of Expansion of the Product Lines

This factor concerns expansion in the types of services offered by the parties. *Champions*, 78 F.3d at 1121. A strong possibility that the parties will expand their business to compete with the other or be marketed to the same consumers weighs in favor of a likelihood of confusion. *Id.*

However, a finding that neither party will expand does not address whether there is a likelihood of confusion. *Id.* Thus, an affirmative finding of the likelihood of expansion provides a strong indication of a likelihood of confusion while a negative finding is not a strong indication that there will not be a likelihood of confusion. *Id.*

There is always the possibility that Defendants may expand in the future and extend their business to compete with Plaintiff in areas outside of Ohio. However, these possibilities are conjectural at best. There is nothing before the Court to indicate whether Defendant's business will expand to further compete with Plaintiff or, if so, the extent to which it would. Such conjecture does not lend itself to a finding that this factor favors the likelihood of confusion.

### i.  **Balancing *Frisch's* Factors**

Balancing these factors, the Court finds that Plaintiff has not sufficiently pleaded that there is a likelihood that consumers would confuse Defendants' "BODINE AND COMPANY" mark and Plaintiff's "BODINE PERRY" mark. Even with the benefit of liberal construction, Plaintiff does not plead factual allegations that allow the Court to draw the reasonable inference that Defendants are liable for trademark infringement. *See Iqbal*, 556 U.S. at 678. Accordingly, the Court dismisses Plaintiff's federal and Ohio common law trademark infringement claims.

### B.  **Count II – Breach of Agreement**

Under Ohio law, a breach of contract claim requires: 1) formation of a binding contract; 2) that the non-breaching party performed its contractual obligations; 3) that the breaching party failed to fulfill its contractual obligations without legal excuse; and 4) that the non-breaching party suffered damages because of the breach. *See Carbone v. Nueva Constr. Group, L.L.C.*, 83 N.E.3d 375, 380 (Ohio App. 8th Dist. 2017).

Plaintiff's breach of agreement claim fails at the third prong because as discussed above, Defendants did not use the "BODINE PERRY" mark in violation of the Operating and Assignment Agreements. Defendants' mark is significantly different from that of Plaintiff. Defendants' use of the "BODINE AND COMPANY" mark is not the use of Plaintiff's "BODINE PERRY" mark, and, thus, does not violate the mentioned agreements. Therefore, the Court dismisses Plaintiff's breach of contract claim.

### C. Count III – Federal Unfair Competition / False Designation of Origin

Plaintiff seeks judgement in its favor for false designation of origin under the Lanham Act, 15 U.S.C. § 1125(a). Similar to its common law trademark infringement claim, Plaintiff alleges that (1) it is the owner of the common law trademark rights for the "BODINE PERRY" mark; (2) Defendants' unauthorized use of Plaintiff's mark deceives and is likely to deceive others into believing that Defendants are sponsored by, approved by, or affiliated with Plaintiff; and (3) Plaintiff has suffered damages as a result of Defendants' infringement and, further, that it will continue to suffer damages if Defendants are not enjoined, including diminution in the value of and goodwill associated with the trademark. (ECF No. 1, Compl. at 6-7 ¶ 25-8).

Section 1125(a) prohibits the use in commerce of "any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact" which is "likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such persons with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person…." 15 U.S.C. § 1125(a)(1)(A). The Sixth Circuit has held that a Lanham Act claim for false designation of origin must satisfy two elements: (1) the false designation must have a substantial economic effect on interstate commerce; and (2)

the false designation must create a likelihood of confusion.  *Johnson v. Jones*, 149 F.3d 494, 502 (6th Cir. 1988). *See also Sunless, Inc. v. Palm Beach Tan, Inc.*, 2021 WL 4777439 at * 4 (N.D. Ohio June 30, 2021), *aff'd* 33 F. 4th 866 (6th Cir. 2022).

The touchstone of these types of claims is whether the defendant's use of the disputed mark is likely to cause confusion among consumers.  *See Daddy's Junky Music Stores, Inc.*, 109 F.3d at 280.  Courts apply the same analysis to assess consumer confusion for both trademark infringement claims and false designation of origin claims.  *See Audi AG v. D'Amato*, 469 F.3d 534, 542 (6th Cir. 2006).  Like its trademark infringement claims, Plaintiff's claim for false designation of origin also fails.  While Defendants' "BODINE AND COMPANY" mark is distinct from Plaintiff's "BODINE PERRY" mark, there could be some possibility that new consumers would have confusion regarding the origin of the services offered by the parties.  That possibility is not enough for Plaintiff to prevail.  This claim fails because, as discussed, Defendants did not use Plaintiff's mark.  So, there is no plausible argument that such use had a substantial effect on interstate commerce.  The Court does not consider two distinct marks that could cause confusion the same as likely confusion caused by the unauthorized use of another's mark through deceit.  Therefore, the Court dismisses Plaintiff's false designation of origin claim.

**D.  Counts V and VI – Common Law Unfair Competition and Ohio Deceptive Trade Practices**

Plaintiff alleged claims of deceptive acts and trade practices in violation of Section 4165.02 of the Ohio Revised Code; it also alleges trademark infringement and unfair competition in violation of Ohio common law.  Ohio law prohibits entities or persons from engaging in conduct that "[c]auses likelihood of confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods or services," Ohio Rev. Code § 4165.02(A)(2), or that "causes likelihood

of confusion or misunderstanding as to affiliation, connection, or association with, or certification by, another[.]" *Id.*, § 4165.02(A)(3).

The analyses of deceptive trade practices claims under Section 4165.02 of the Ohio Revised Code and unfair competition claims under Ohio common law are the same as that for an unfair competition claim under the Lanham Act. *See ETW Corp. v. Jireh Publ'g, Inc.*, 332 F.3d 915, 920 (6th Cir. 2003) ("[O]ur discussion of the federal trademark claims will therefore encompass the state trademark claims as well."); *Abercrombie & Fitch Stores, Inc.*, 280 F.3d at 626 n.2 ("Both Ohio and federal courts have recognized that the same analysis applies to claims under Ohio's statutory and common law of unfair competition and the Lanham Act.").

Because the Court has already determined that Plaintiff's Lanham Act claim is to be dismissed, the same reasoning applies to Plaintiff's claims of unfair competition and deceptive trade practices under Ohio common law and statutory law. Therefore, the Court dismisses Plaintiff's common law unfair competition and Ohio deceptive trade practices claims.

### E. Count VII – Tortious Interference with Business Relationships

Under Ohio law, interference with business relationships or contracts generally occurs when a person without privilege to do so, induces or otherwise purposely causes a third person not to enter or continue a business relation with another or not to perform a contract with another. *Wauseon Plaza Ltd. Psp. v. Wauseon Hardware Co.*, 156 Ohio App.3d 575, 588, 807 N.E.2d 953, 962–63 (2004); *A & B—Abell Elevator Co. v. Columbus/Cent. Ohio Bldg. & Constr. Trades Council*, 73 Ohio St.3d 1, 14, 651 N.E.2d 1283, 1294 (1995). To establish a claim of tortious interference with a business relationship, the plaintiff must establish: "(1) the existence or the prospect of a business relationship; (2) that defendant knew of the plaintiff's relationship; (3) that defendant intentionally and materially interfered with the plaintiff's prospective relationship; (4)

the interference was without justification; and (5) the interference causes the plaintiff to suffer damages." *Edwards v. Woodforest Nat'l Bank*, 2012 WL 1906309, at *4, 2012 U.S. Dist. Lexis 72974 *9-10 (N.D. Ohio May 24, 2012). The basic principle underlying a claim of tortious interference is that when someone acting without privilege, induces or purposely causes a third party to terminate a business relationship with another, then that person should be liable for the harm resulting from the terminated relationship.

Plaintiff failed to allege a plausible claim for tortious interference with business relationships. As noted above, a tortious interference claim under Ohio law requires the existence of a business relationship of the plaintiff, or the prospect of a business opportunity of the plaintiff, and that Defendants had knowledge of and intentionally interfered with the business relationship. Plaintiff's claim does not allege or identify any business "relationship" or "prospect of a business relationship" that Plaintiff had with anyone other than unidentified potential clients. Thus, Plaintiff does not allege facts which plausibly suggest that Defendants—whether by their conduct in using the "BODINE AND COMPANY" mark or any other conduct—intentionally caused anyone to discontinue a business relationship with Plaintiff. Defendants mention that Plaintiff lost clients to Bodine and Co. in their Motion, but clarify that those clients voluntarily left because they prefer doing business with Defendants. (ECF No. 6, Mem. in Supp. at 3). Plaintiff did not address this in either its Opposition or Sur-Reply. Plaintiff failed to allege facts that raise a right to relief on a theory of tortious interference with a prospective business opportunity above a speculative level. Since Plaintiff failed to address this argument in its responsive briefs, this claim is waived.[11] The Court dismisses Plaintiff's tortious interference with business relationships claim.

---

[11] *See, e.g.*, *Humphrey v. U.S. Att'y Gen.'s Off.*, 279 Fed. App'x 328, 331 (6th Cir. 2008) (finding that a plaintiff's failure to oppose arguments raised in the defendants' motion to dismiss is grounds for the district court to assume that opposition to the motion is waived).

**F.  Plaintiff's Frivolous Motion Claim**

In its Opposition, Plaintiff "asked" the Court to find Defendant's Motion frivolous and award it attorneys' fees incurred in responding.  (ECF No. 8, Opp. at 7).  Plaintiff argues that Defendants were aware of several factors related to its mark, the Operating and Assignment Agreements, and the transfer of Mr. Bodine's right to the mark, which Plaintiff alleges rendered Defendants' Motion filed meritless.  *Id*.  The Court found Defendants' motion to be meritorious, so it necessarily follows that it is not frivolous, and Plaintiff is not entitled to an award of attorneys' fees.

**IV.    CONCLUSION**

For the foregoing reasons, the Court **GRANTS** Defendants' Motion to Dismiss (ECF No. 6), as to all Plaintiff's claims.

**IT IS SO ORDERED.**

Dated: March 31, 2023

CHARLES E. FLEMING
U.S. District Court Judge